**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MARCELO JEREZ,<br><br>    **Petitioner**,<br><br>       v.<br><br>**WARDEN**, San Juan Staging Facility; **GARRET J. RIPA**, Miami Field Office Director for U.S. Immigration and Customs Enforcement and Removal Operations; **TODD LYONS**, Acting Director for U.S. Immigration and Customs Enforcement; **MARKWAYNE MULLIN**, Secretary of Homeland Security; **TODD BLANCHE**, Acting United States Attorney General; *all in their official capacities*,<br><br>    **Respondents**. | **CIVIL NO.** 26-1288 (RAM) |

## <u>MEMORANDUM AND ORDER DENYING TEMPORARY RESTRAINING ORDER</u>

Pending before the Court is Petitioner Marcelo Jerez ("Petitioner" or "Jerez")'s *Emergency Motion for Temporary Restraining Order* (the "*Emergency Motion*"). (Docket No. 2). For the reasons outlined below, the *Emergency Motion* is **DENIED**.

## I.   BACKGROUND

On May 12, 2026, Petitioner filed his pending *Emergency Motion*. (Docket No. 2). Petitioner seeks to preserve the status quo pending the resolution of his *Petition for Writ of Habeas Corpus* (the "*Petition*") from earlier on the same day. (Docket Nos. 1 and 2).

In his *Petition,* Jerez alleges that: (1) he is a national and citizen of the Dominican Republic; (2) in 2001 he entered Puerto Rico without undergoing proper admission procedures; (3) on March 29, 2017, he married Laura Maria de Jesus Rosario, a United States citizen; and (4) he has a one-year-old child who is a United States citizen with a serious medical condition that requires monitoring and care. (Docket No. 1 at 1-5).

Jerez alleges that on May 11, 2026, he was en route to his employment when he was stopped by four vans belonging to U.S. Immigration and Customs Enforcement ("ICE"), although he had not committed any traffic infractions or crimes. Id. at 6. Jerez claims that ICE officials requested his signature on certain documents, but without his comprehension or discernment of the documents' contents; he claims to have since retracted his signatures and plans to mount a defense against his removal in the immigration courts. Id. He claims to be presently eligible for Cancellation of Removal on account of his presence in this country for more than a quarter century and the need for his daughter to receive care and avoid undue hardship. Id. He avers that he has no history of violence and no pending criminal charges. Id. Jerez says he is detained at the San Juan Staging Facility in Guaynabo. Id. at 1.

Jerez argues that he is not subject to mandatory detention under the Immigration and Nationality Act ("INA"), because the Department of Homeland Security ("DHS")'s new interpretation of 8

U.S.C. § 1225 as permitting the mandatory detention of all non-admitted aliens is incorrect. Id. at 8. Jerez contends that his situation should instead be covered by 8 U.S.C. § 1226, which permits the discretionary release of detained aliens on bond. Id. Because the United States is not affording Jerez a bond hearing, Jerez alleges violations of: his Fifth Amendment due process rights; the INA and its implementing regulations; and bond regulations. Id. at 9-11. Jerez also includes a Fifth Amendment-based access to counsel claim. Id. at 11.

In his *Emergency Motion*, Jerez contends that: he has a high likelihood of success on the merits because he is allegedly not subject to mandatory detention under the INA; he will imminently suffer irreparable harm because he will be subject to unjust detention and because of his separation from his family and daughter; and that the balance of equities and the public interest tip "sharply" in his favor on account of the impending deprivation of his constitutional rights, the violation of the sanctity of his family unit, and the denial of his access to courts. (Docket No. 2 at 2-4).

Accordingly, Jerez petitions the Court to: enjoin Respondents from transferring him outside of the District of Puerto Rico; order them to provide him with meaningful access to counsel; have Respondents show cause as to why any relief afforded should not remain in effect; and waive bond requirements. Id. at 4-5.

Civil No. 26-1288(RAM)                                                4

## II.  DISCUSSION

When evaluating a request for a temporary restraining order, courts must consider the same four factors that apply to a motion for preliminary injunction, namely: (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the request is denied; (3) the balance of hardships; and (4) whether the TRO is in the public interest. *See* Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 161-62 (1st Cir. 2004) ("We hold that the traditional four-part preliminary injunction standard applies in full flower to motions brought under Rule 65 in hopes of securing prejudgment freeze orders").

Furthermore, courts may issue a temporary restraining order only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). It has long been established that under federal law, *ex parte* temporary restraining orders "**should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.**" Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of

<u>Alameda Cnty.</u>, 415 U.S. 423, 439 (1974) (emphasis added). Therefore, "[t]emporary restraining orders 'must be used sparingly and only in cases where the need for extraordinary equitable relief is clear and plain.'" <u>Ginzburg v. Martinez-Davila</u>, 368 F. Supp. 3d 343, 347 (D.P.R. 2019) (quoting <u>Northwest Bypass Grp. v. United States Army Corps. of Eng'rs</u>, 453 F.Supp.2d 333, 338 (D.N.H. 2006)).

The Court finds that in the case at bar, Petitioner has not carried his burden as to the likelihood of success on the merits. As this Court has noted before with respect to the propriety of DHS's new interpretation of 8 U.S.C. § 1225 vis-à-vis the mandatory detention of aliens arrested in the interior of the United States:

> Neither party nor the Court are writing on a blank slate. The statutory construction question that is at the crux of this case has been the subject of myriad lawsuits throughout the nation and dutiful judges have reached divergent answers.[1] Having parsed through the statutes, the parties' submissions, and the authorities cited therein, the Court finds that the mandatory detention provision of 8 U.S.C. § 1225 applies[.]

<u>Alvarez-Felix v. Ramos</u>, 2026 WL 438160, at *1 (D.P.R. 2026).

---

[1] For example, the following cases found that detention is discretionary in analogous cases: <u>Gomes v. Hyde</u>, 804 F. Supp. 3d 265, 278 (D. Mass. 2025); <u>Armando Becerra Vargas v. Bondi</u>, SA-25-cv-1023, 2025 WL 3300446 (W.D. Tex. Nov. 12, 2025); <u>Guerrero Orellana v. Moniz</u>, No. 25-CV-12664-PBS, 2025 WL 3033769 (D. Mass. Oct. 30, 2025). By contrast, these cases determined that mandatory detention is proper for petitioners with similar circumstances: <u>Ramirez Melgar v. Bondi</u>, No. 8:25CV555, 2025 WL 3496721 (D. Neb. Dec. 5, 2025); <u>Rojas v. Olson</u>, No. 25-CV-1437-BHL, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025); <u>Alonzo v. Noem</u>, No. 1:25-CV-01519 WBS SCR, 2025 WL 3208284 (E.D. Cal. Nov. 17, 2025).

As this Court explained at greater length in Alvarez-Felix, when resolving a dispute over the meaning of a statute, courts "begin with the language of the statute itself" and must "first 'determine whether the language has a plain and unambiguous meaning with regard to the particular dispute in the case.'" In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 919 F.3d 121, 128 (1st Cir. 2019) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson, 519 U.S. at 341.

In the case at bar, as in Alvarez-Felix, the Court finds that Section 1225(a)(1)'s definition of "applicants for admission" is unambiguous. It defines applicants for admission as "alien[s] present in the United States who has not been admitted or who arrive[] in the United States (whether or not at a designated port of arrival[)]." 8 U.S.C. § 1225(a)(1). The INA also defines the terms "admitted" and "admission" with respect to a noncitizen as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). In other words, an applicant for admission is a noncitizen present in the United States who either: (1) has not been granted lawful entry into the United States after inspection and authorization by an immigration officer; **or** (2) arrives in the

United States, irrespective of whether at a point of entry. Per the plain and unambiguous language of the statute, then, the term "applicants for admission" includes all noncitizens in the United States who have not been inspected and granted admission, whether at a point of entry or elsewhere.

Petitioner necessarily falls within this definition, as he concededly: (1) is not a citizen of the United States; (2) entered the United States without undergoing proper admission procedures (*i.e.*, without being inspected and admitted); and (3) is present in the United States. (Docket No. 1 at 1). As such, he is subject to the mandatory detention provisions for "applicants for admission" under Section 1225(b)(2).

As it has recognized before, the Court emphasizes that Section 1225(b)(2) is not a license for indefinite detention. <u>Alvarez-Felix</u>, 2026 WL 438160, at *1. Likewise, nothing in this order should be construed as authorization for the United States to indefinitely detain Jerez.

### V. CONCLUSION

On his averments, save for his illegal entry into the country, Jerez appears to be generally law-abiding and is a husband and father of United States citizens. If the decision could be based purely on sympathy, a different result might be warranted. But the Court's duty is "to interpret the law not to re-write it." <u>In re Fin. Oversight & Mgmt. Bd. for Puerto Rico</u>, 919 F.3d at 132. This

Civil No. 26-1288(RAM)                                                    8

Court is of the view that the plain meaning of Section 1225(a)(1) and Section 1225(b)(2) compel Jerez's detention and render him ineligible for a bond hearing under Section 1226. Considering the foregoing and because he has not demonstrated a likelihood of success on the merits, Petitioner's *Emergency Motion* at Docket No. 2 is hereby **DENIED.**

In light of this order and the Court's prior ruling in Alvarez-Felix, 2026 WL 438160, Petitioner shall **SHOW CAUSE** by **May 27, 2026** as to why this case should not be dismissed for failure to state a claim upon which relief can be granted.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this **13th day of May 2026 at 7:15 p.m.**

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge